**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| KATIE KLINGBERG, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-00138 |
| v. | ) ) | Hon. John Robert Blakey |
| WHOLE FOODS MARKET GROUP, INC., a Delaware corporation, | ) ) ) | Hon. Michael T. Mason |
| Defendant. | ) ) ) | **JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Katie Klingberg ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Second Amended Class Action Complaint against Defendant Whole Foods Market Group, Inc. ("WFM" or "Defendant"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by counsel.

## NATURE OF THE ACTION

1.      This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes who purchased WFM's St. John's Wort dietary supplement (the "Product").

2.      "One of the fastest growing industries in the world is the nutritional supplement group, or more broadly known as Vitamins, Minerals and Supplements, or VMS. Producing about $32 billion in revenue for just nutritional supplements alone in 2012, it is projected to

double that by topping $60 billion in 2021 according to the Nutritional Business Journal."[1]

3.     In order to reap substantial profits from the sales of nutritional supplements, many companies, including WFM, look to cut corners to keep manufacturing costs low for their products.

4.     WFM formulated, manufactured, warranted, advertised and sold the Product throughout a large majority of the United States, including in the State of Illinois and in this District.

5.     Unbeknownst to Plaintiff and the members of the Classes, who relied upon WFM's Product labeling, the dietary supplement Product sold by WFM did not contain consistent amounts of the sole active ingredient, the standardized extract hypericin, as listed on its label.

6.     Despite having knowledge that the Product's labeling is deceptive, misleading, and constitutes a fraud on consumers, WFM continues to advertise, distribute, label, manufacture, market, and sell the Product in a false, misleading, unfair, and deceptive manner.

7.     As a result of WFM's unlawful and deceptive conduct, Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## **PARTIES**

8.     During the Class period, Class members in Illinois and throughout the United States purchased the Product through WFM's numerous brick and mortar and online retail stores. Plaintiff and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Second Amended Class Action Complaint.

---

[1] *Nutritional Supplements Flexing Muscles As Growth Industry*, FORBES, http://www.forbes.com/sites/davidlariviere/2013/04/18/nutritional-supplements-flexing-their-muscles-as-growth-industry/ (last visited on May 24, 2017).

9.      Plaintiff Katie Klingberg is a citizen of the State of Illinois. At relevant times to this matter, she resided, and continues to reside, in this District. In October 2016, Plaintiff purchased WFM's St. John's Wort Product for her own use from a WFM retail store in Naperville, Illinois for approximately $14.99.

10.     Defendant Whole Foods Market Group, Inc. is a privately-held Delaware corporation with its principal place of business located at 550 Bowie Street, Austin, Texas. WFM is a large supermarket chain with hundreds of retail grocery stores across the country that sell natural and organic foods, dietary supplements, and personal care products.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Classes are citizens of States other than the States in which WFM is incorporated and has its principal place of business.

12.     Diversity jurisdiction exists because Plaintiff is a citizen of Illinois and WFM is a citizen of Delaware and Texas.

13.     This Court has personal jurisdiction over WFM because it conducts business in Illinois. WFM has marketed, distributed, and sold the Product in Illinois. WFM has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this State through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

14.     This Court has personal jurisdiction over WFM because it has continuous and systematic contacts with Illinois. WFM owns and operates dozens of retail stores in this District

and regularly sells its products to Illinois residents. WFM conducts business throughout a large majority of the United States, including in the State of Illinois and in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because WFM transacts substantial business in this District.

## FACTUAL ALLEGATIONS

16. WFM labels and markets its St. John's Wort Product in such a deceptive and misleading manner that Plaintiff and Class members were deceived into purchasing a Product that failed to provide consistent amounts of the active ingredient standardized extract hypericin.

17. Health experts have long complained about the quality and safety of herbal supplements, which are exempt from the strict regulatory oversight applied to prescription and over-the-counter drugs. Putting aside questions as to the efficacy of these supplements, there have been longstanding questions as to whether they even contain the ingredients listed on their labels.

18. Although there is some regulatory framework under the Food, Drug and Cosmetic Act (the "FDCA") for herbal extracts, neither the FDCA nor the United States Food and Drug Administration have provided a legal or regulatory definition for "standardized" extracts. Indeed, the National Institutes of Health, Office of Dietary Supplements, has confirmed that "no legal or regulatory definition exists for standardization in the United States as it applies to botanical dietary supplements."[2]

---

[2] *Botanical Dietary Supplements*, NATIONAL INSTITUTES OF HEALTH, OFFICE OF DIETARY SUPPLEMENTS, http://ods.od.nih.gov/factsheets/BotanicalBackground-HealthProfessional/ (last visited May 24, 2017).

19.     Despite this lack of oversight by any governmental authority, the purpose of standardizing an extract is well known, as stated by NOW Foods, a leading dietary supplement manufacturer:

> A standardized herbal extract is an herb extract that has one or more components present in a specific, guaranteed amount, usually expressed as a percentage. The intention behind the standardization of herbs is to guarantee that the consumer is getting a product in which the chemistry is consistent from batch to batch.[3]

20.     Although there is no legal or regulatory definition, scientific journals have found that "standardized guarantees the content of one or more active constituents and marker compounds."[4]

21.     When Plaintiff and Class members were shopping for a St. John's Wort product in the standardized form, they expected to receive the "guaranteed" amount listed on the label based upon the general understanding of "standardized." Unfortunately, this is not what has happened.

22.     Specifically, the label of WFM's St. John's Wort Product predominantly features "Standardized" on the front of the label:

---

[3] *Whole Herbs vs. Standardized Herbal Extracts: Which is Better?*, NOW FOODS, https://www.nowfoods.com/now/nowledge/whole-herbs-vs-standardized-herbal-extracts-which-better (last visited May 24, 2017).
[4] Garg, V., et al., *Facts about standardization of herbal medicine: a review*. Journal of Chinese Integrative Medicine, October 2012, Vol. 10, No. 10, 1077.



23.    The front label of the Product also advertises and markets that it "Supports a Healthy, Positive Mood."

24.    On the back label of the Product under the Supplement Facts section, WFM claims that the Product has "0.3% Hypericin, 0.9 mg."



25. After the consumer watchdog group ConsumerLab.com reported that WFM's St. John's Wort Product contained low levels of hypericin,[5] Plaintiff's counsel had the Product tested and found that it contained even less hypericin than reported by ConsumerLab.com. While ConsumerLab.com found the Product to contain just less than 60% of the label claim, Plaintiff's testing showed just a little above 30% of the label claim. *See* ChromaDex WFM St. John's Wort Product Test Results, attached hereto as Exhibit A.

26. Based on these test results, WFM's claims that its St. John's Wort Product contains "0.3% Hypericin, 0.9 mg" and "Supports a Healthy, Positive Mood" are false, deceptive and misleading.

27. St. John's Wort is promoted as an anti-depressant herb that is commonly used for its neurological effects.

---

[5] *St. John's Wort Supplements Review*, CONSUMERLAB.COM, https://www.consumerlab.com/reviews/St_Johns_Wort/stjohnswort/ (last visited May 24, 2017).

28.    WFM is fully aware that scientific literature has shown benefits with the Product, but at the lowest dosage of 0.9 mg per day, the exact amount claimed on the Product's label. Also, because WFM is the manufacturer of the Product, it is fully aware that it manufactures the Product to contain less of the standardized extract than claimed on the label. Plaintiff, Class members, and a reasonable consumer would consider and use this information in making the decision regarding whether to purchase WFM's St. John's Wort Product. However, WFM purposely omitted this material fact, to the detriment of Plaintiff and other Class members.

29.    Plaintiff and Class members purchased and consumed the Product because they believed, based upon the misleading label, that it contained the standardized ingredient listed on the label and that the quantity of such ingredient was accurately stated on the Product's label.

30.    The labeling of the Product as "Standardized" was misleading to Plaintiff and Class members.

31.    Plaintiff and Class members had a reasonable expectation that when purchasing WFM's "Standardized" St. John's Wort Product, they purchased a Product with precise amounts of "standardized" hypericin contained within the Product.

32.    Plaintiff and other members of the Classes would not have bought WFM's St. John's Wort Product if they had known that the Product had a significantly lower quantity of the standardized extract hypericin than was stated on the Product label.

33.    Plaintiff and Class members were in fact misled by WFM's representations regarding the true nature of the hypericin content and value.

34.    The difference between the Product promised and the Product sold is significant. The amount of hypericin provided in WFM's St. John's Wort dietary supplement has a real

impact on the benefits provided to consumers by the Product, and the actual value of the Product itself.

35.     WFM's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food—including nutritional supplements—misbranded when the label contains a statement that is "false or misleading in any particular."

36.     The State of Illinois has expressly adopted the federal food labeling requirements as its own through the Illinois Food, Drug and Cosmetic Act, and has indicated that "[t]he Director is authorized to make the regulations promulgated under this Act conform, in so far as practicable, with those promulgated under the Federal Act." 410 ILCS 620/21(a). Additionally, under Illinois law, "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

37.     Further, as explained above, WFM's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded — (a) If (1) its labeling is false or misleading in any particular."

38.     The Illinois legislature has adopted the same language of the FDCA in 410 ILCS 620/11 by stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular."

39.     Moreover, the Illinois Consumer Fraud Act and Deceptive Business Practices Act, which provides protection for consumers when purchasing products, including WFM's St. John's Wort Product, expressly states that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful . . . ."

815 ILCS 505/2.

40.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

41.     Plaintiff and Class members would have purchased other St. John's Wort dietary supplements, if any at all, if they had not been deceived by the misleading and deceptive labeling of the Product by WFM.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this class action lawsuit on behalf of herself and proposed Classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

43.     Plaintiff seeks certification of the following Classes:

**Consumer Fraud Multi-State Class:** All persons in the States of Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, and New York who purchased the Product.[6]

**Illinois Class:** All persons in the State of Illinois who purchased the Product.

Excluded from the Classes are WFM and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

---

[6] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); and New York (N.Y. Gen. Bus. Law § 349, *et seq.*).

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff, but may be ascertained from WFM's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

46.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting only individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

   a)  The true nature of the standardized extract hypericin content in the Product;

   b)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

   c)  Whether WFM's actions violate  the state consumer fraud statutes invoked below;

   d)  Whether WFM breached an express warranty to Plaintiff and members of the Classes; and

   e)  Whether WFM was unjustly enriched at the expense of Plaintiff and members of the Classes.

47.     WFM engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are

involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

48. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by WFM in violation the laws as complained of herein. Further, the damages of each member of the Classes were caused directly by WFM's wrongful conduct in violation of the laws as alleged herein.

49. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because she is a member of the Classes and her interests do not conflict with the interests of the other members of the Classes she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all members of the Classes. Accordingly, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

50. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** WFM has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

51. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to

individually litigate their claims against WFM, so it would be impracticable for members of the

Classes to individually seek redress for WFM's wrongful conduct. Even if Class members could

afford individual litigation, the court system could not. Individualized litigation creates a

potential for inconsistent or contradictory judgments, and increases the delay and expense to all

parties and the court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court.

### CLAIMS ALLEGED

### COUNT I
**Violation of State Consumer Fraud Acts**
**(On Behalf of the Consumer Fraud Multi-State Class)**

52.     Plaintiff repeats and re-alleges each and every allegation above as if set forth

herein.

53.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State

Class[7] prohibit the use of unfair or deceptive business practices in the conduct of trade or

commerce.

54.      WFM intended that Plaintiff and each of the other members of the Consumer

Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would

in fact be misled by this deceptive conduct.

55.     WFM has actual knowledge that its St. John's Wort Product labeling is

deceptive, misleading, and fraudulent. Nevertheless, WFM continues to advertise, distribute,

label, manufacture, market, and sell the Product in a false, misleading, unfair, and deceptive

---

[7] Florida (Fla. Stat. § 501.201, *et seq.*); Illinois  (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp.  Laws § 445.901, *et  seq.*); Minnesota (Minn. Stat. § 325F.67, *et  seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); and New York (N.Y. Gen. Bus. Law § 349, *et seq.*).

manner.

56.     As a result of WFM's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

57.     In addition, WFM's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (In the Alternative to Count I and On Behalf of the Illinois Class)

58.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

59.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose. 815 ILCS 505/11a.

60.     WFM's conduct in representing the benefits of its St. John's Wort Product constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of WFM's trade or commerce.

61.     WFM intended that Plaintiff and each of the other members of the Illinois Class would rely on its representations. Through independent Product testing performed by ConsumerLab.com and Plaintiff's counsel, the Product has been shown not to contain the claimed amount of hypericin, and WFM intended to profit upon this fact.

62.     This misrepresentation is material because it concerns the type of information upon which a reasonable consumer would be expected to rely upon in making a decision whether to purchase the Product.

63.     Because WFM is in the business of selling dietary supplement products, WFM committed unfair and deceptive acts in the conduct of its trade and commerce.

64.     WFM's practice of misrepresenting the Product is also unfair because it offends public policy and is immoral, unethical, and unscrupulous. Illinois consumers are being misled about the very efficacy and purpose of the Product. Misrepresenting the Product offends the public's expectation to be told the truth about the products they are buying.

65.     Because the Product has no efficacy, the Product sold is worth less than the Product as represented, and Plaintiff and members of the Illinois Class paid a premium for the Product. Had the truth been known, Plaintiff and members of the Illinois Class would not have purchased the Product.

66.     Plaintiff and members of the Illinois Class were deceived by the labeling on the Product and suffered economic damages as a proximate result of WFM's unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if it had been as represented.

67.     Plaintiff also seeks to enjoin WFM's ongoing deceptive practices relating to its claims on the Product's labels and advertising.

### COUNT III
**Breach of Express Warranty**
**(On Behalf of the Illinois Class)**

68.     Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

69. Plaintiff, and each member of the Illinois Class, formed a contract with WFM at the time Plaintiff and the other members of the Illinois Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by WFM on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties, became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Illinois Class and WFM.

70. WFM purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product contained a "standardized" amount of hypericin, specifically "0.3% Hypericin, 0.9 mg."

71. Plaintiff and members of the Illinois Class performed all conditions precedent to WFM's liability under this contract when they purchased the Product.

72. WFM breached express warranties about the Product and its qualities because WFM's statements about the Product were false and the Product does not conform to WFM's affirmations and promises described above.

73. Pursuant to 810 ILCS 5/2-607(3)(a), on November 14, 2016, Plaintiff, on behalf of herself and the Class, provided Roberta Lang, General Counsel of Whole Foods Market, Inc., with sufficient notice of Whole Foods's breach of the express warranties listed on the label of its St. John's Wort dietary supplement Product. *See* Plaintiff's November 14, 2016 Pre-Suit Notice Letter, attached hereto as Exhibit B. In particular, Plaintiff notified Whole Foods that its St. John's Wort Product contains substantially less hypericin than advertised on the Product label.

74. WFM operates as a subsidiary of Whole Foods Market, Inc.[8] Upon information and belief, during the relevant time period and continuing through February 2017, Roberta Lang served as the General Counsel of Whole Foods Market, Inc.[9] as well as the General Counsel and President of WFM.[10]

75. After Plaintiff filed her initial class action complaint on January 9, 2017 (Dkt. No. 1), Plaintiff's counsel and counsel for Whole Foods Market, Inc. conferred regarding the claims asserted.

76. Counsel for Whole Foods Market, Inc. also serves as counsel for WFM. In a letter dated February 13, 2017, counsel for Whole Foods Market, Inc. and WFM informed Plaintiff's counsel that WFM was the proper Whole Foods entity for the claims asserted in this action. Counsel for Whole Foods Market, Inc. and WFM also notified Plaintiff's counsel that if WFM was substituted as a defendant in place of Whole Foods Market, Inc., counsel for WFM was authorized to waive service under Federal Rule of Civil Procedure 4(d).

77. Based upon the information learned from counsel for Whole Foods Market, Inc. and WFM, Plaintiff amended her complaint on February 21, 2017 to substitute WFM for Whole Foods Market, Inc. as a defendant. (Dkt. No. 6.) Prior to filing her amended complaint, counsel

---

[8] *See Investor Relations SEC Filings*, WHOLE FOODS MARKET, Whole Foods Market, Inc. 2016 Form 10-K Annual Report, Exhibit 21.1, available at http://d18rn0p25nwr6d.cloudfront.net/CIK-0000865436/1559d257-052a-4738-a9ca-e56c1fff6fc5.pdf.

[9] *The Top In-House Hires Of April*, LAW360, May 3, 2017, https://www.law360.com/articles/920022/ the-top-in-house-hires-of-april (stating that effective April 11, 2017, Heather Stern replaced Roberta Lang as Whole Foods Market Inc.'s general counsel and global vice president of legal affairs) (last visited May 24, 2017).

[10] *See* United States Environmental Protection Agency, Consent Agreement and Final Order, Mar. 16, 2016, available at https://yosemite.epa.gov/OA/RHC/EPAAdmin.nsf/Filings/ 9E13542BBD888DFF85257F7B001BD54F/$File/EPCRA-05-2016-0011%20CAFO%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.pdf (bearing signature of Roberta Lang, General Counsel of Whole Foods Market Group, Inc.); *see also Inspections, Compliance, Enforcement, and Criminal Investigations*, U.S. FOOD & DRUG ADMINISTRATION, Warning Letter, June 8, 2016, https://www.fda.gov/iceci/enforcementactions/ warningletters/2016/ucm506089.htm (listing Roberta Lang as President of Whole Foods Market Group, Inc.) (last visited May 24, 2017).

for WFM was aware of Plaintiff's intention to amend the complaint to name WFM as a defendant.

78.     Counsel for WFM accepted service of Plaintiff's amended complaint and executed a waiver of service on February 23, 2017. (Dkt. No. 7.)

79.     By providing pre-suit notice, Plaintiff has effectively notified WFM of the troublesome nature of her transaction within a reasonable time of discovering the breach.

80.     Despite the above notice to WFM that its Product does not meet WFM's warranties and in fact fails in many respects to perform consistent with the Product's representations, WFM continues to hide the facts from consumers and fails to correct the material misrepresentations regarding defects of its Product. Rather, WFM continues to market and sell the Product in a misleading and deceptive manner.

81.     Actual and/or constructive notice was duly given to WFM of the breaches of these warranties, and WFM has yet failed to cure.

82.     Given that Plaintiff provided actual, pre-suit notice to Whole Foods Market, Inc. and to WFM, WFM was on notice of Plaintiff's claims but did nothing to address them. At the time of filing her amended complaint on February 21, 2017, the President/General Counsel and counsel for WFM had actual knowledge of the defect of the particular product and of Plaintiff's transaction—particularly, that she purchased a St. John's Wort dietary supplement from a Whole Foods retail store in Naperville, Illinois and learned that the Product contained substantially less hypericin than advertised on the Product label.

83.     Plaintiff and each of the members of the Illinois Class would not have purchased the Product had they known the true nature and quality of the Product.

84. As a result of WFM's breach of warranty, Plaintiff and each member of the Illinois Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

**COUNT IV**
**Unjust Enrichment**
**(In the Alternative to Count III and On Behalf of the Illinois Class)**

85. Plaintiff repeats and re-alleges each and every allegation above as if set forth herein.

86. Plaintiff and the other members of the Illinois Class conferred benefits on WFM by purchasing the Product.

87. WFM has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the Illinois Class's purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because WFM's labeling of the Product was misleading to consumers, and caused injuries to Plaintiff and the other members of the Illinois Class because they would have not purchased the Product if the true facts would have been known.

88. Because WFM's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the Illinois Class is unjust and inequitable, WFM must pay restitution to Plaintiff and the other members of the Illinois Class for its unjust enrichment, as ordered by the Court.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

E.    Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the Classes;

F.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

I.    Ordering such other and further relief as may be just and proper.


Dated: May 24, 2017                Respectfully submitted,

By:    /s/ Michael L. Silverman   
       Michael L. Silverman


Klint L. Bruno
*kb@brunolawus.com*
Michael L. Silverman
*msilverman@brunolawus.com*
**THE BRUNO FIRM**
900 West Jackson Boulevard
Suite 4E
Chicago, Illinois 60607
Phone: 773.969.6160

Nick Suciu III
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Road
Bloomfield Hills, Michigan 48302
Phone: 313.303.3472

***Counsel For Plaintiff***
***And The Proposed Classes***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the above

and foregoing **Second Amended Class Action Complaint** was filed electronically with the

Clerk of the Court using the CM/ECF filing system on this 24th day of May 2017 and was

served electronically on all counsel of record.

/s/ Michael L. Silverman